HALPERN MAY YBARRA GELBERG LLP
  Marc D. Halpern (CA Bar No. 216426)
  Gwendolyn M. Toczko (CA Bar No. 255984)
600 West Broadway, Suite 1060
San Diego, California 92101
Telephone: (619) 618-7000
marc.halpern@halpernmay.com

  Ryan D. White (CA Bar No. 255201)
  Susan P. Welch (CA Bar No. 145952)
550 S. Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
susan.welch@halpernmay.com
Attorneys for Plaintiff Emerald Holding, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMERALD HOLDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> W.R. BERKLEY SYNDICATE LIMITED and GREAT LAKES INSURANCE SE, <br><br> Defendants. | CASE NO. 8:21-CV-00340 FWS (KES) <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Judge: Hon. Fred W. Slaughter <br><br> Action Filed: February 22, 2021 |

Pursuant to the Court's April 27, 2022 Reassignment Order, counsel for Plaintiff Emerald Holding, Inc. ("Emerald") and counsel for Defendants Lloyd's Syndicate 1967 and Great Lakes Insurance SE (together "Underwriters," and, together with Emerald, the "Parties") hereby submit this Joint Case Management Statement.

**a. Filing Date:** February 22, 2021

**b. Parties**

Plaintiff Emerald is a leading operator of business-to-business trade show events across the United States, who purchased two event cancellation policies endorsed with communicable disease coverage (the "Policies").

Defendants Lloyd's Syndicate 1967 and Great Lakes Insurance SE issued the "Event Cancellation & Abandonment" insurance policies at issue in this case.

**c. Summary of Claims**

<u>Emerald's Statement</u>

Emerald asserts causes of action for Declaratory Relief, Breach of Contract, and Bad Faith based on Underwriters' failure to provide full coverage as required under the Policies and associated claims-handling misconduct. Among other things, Underwriters have improperly delayed and reduced payments, in order to alleviate financial stress on the insurers during the pandemic, but to the significant detriment of Emerald. Also, despite significant payments to date, Underwriters still owe a substantial amount of unpaid and overdue coverage.

<u>Underwriters' Statement</u>

Underwriters deny these allegations. Emerald has submitted nearly 170 separate claims for coverage; Underwriters have paid Emerald over $200 million on these claims and continue to make payments as Emerald submits new claims and provides new information. Much of the sum that

1 Emerald alleges is outstanding pertains to over 50 claims seeking
2 approximately $90 million that were only submitted in the last 45 days,
3 which claims are currently under evaluation.
4   There are currently no counterclaims, cross-claims, or third party
5 claims.
6 **d. Underlying Events**
7   <u>Emerald's Statement</u>
8   Emerald purchases broad event cancellation insurance coverage, often
9 years in advance in light of the long lead up to events. The coverage
10 protects Emerald against event cancellations or reduced attendance due to
11 covered risks. Emerald purchased such policies from Underwriters for
12 events planned to take place in 2020 and 2021, which expressly include
13 coverage for an outbreak of communicable disease like the COVID-19
14 pandemic. Starting in March 2020, Emerald was forced to begin cancelling
15 and postponing events due to the pandemic. As a result of event
16 cancellations and reductions in 2020 and 2021, to date Emerald has
17 submitted over $337 million in claims for covered losses to Underwriters
18 related to over 165 cancelled or reduced events.
19   Underwriters admitted coverage for these types of losses, but stalled
20 on paying the full amounts owed. For over a year, Underwriters withheld
21 payment of large amounts of the proven losses without clear basis. During
22 the course of this litigation Underwriters have made some additional
23 overdue payments, and likewise additional cancellation and reduction losses
24 have been submitted as the pandemic continued through the end of the 2021
25 policy. Currently almost $129 million in coverage owed remains unpaid.
26 There also are a few events for which Underwriters have improperly refused
27 coverage altogether, contending that the event should not have been
28

cancelled, and yet also not providing the reduced attendance coverage that would have been owed even without a cancellation.

A very significant component of this case is Emerald's bad faith claims. Throughout the pandemic, including when coverage payments were most needed, Underwriters improperly delayed and withheld coverage payments and engaged in all sorts of improper claims-handling tactics to try to hide and justify their misconduct. For example, Underwriters promptly adjusted and agreed to pay around 99% for one of the first cancelled events, ASD March, in early 2020. But then as the pandemic continued, with each further submission Underwriters started slowing things down and paying less. Underwriters began questioning everything, raising unreasonable and irrelevant issues, pretending not to have information that was already in their possession, and even moved the claims adjusting responsibility from the experienced London-market outside adjusters who had been approving payments to outside coverage counsel at the Troutman Pepper firm who would stall everything. There are many other specific examples of improper conduct.

This scheme of withholding and delay was ordered by Underwriters to prop up their own financial condition while they endured the financial stress of the pandemic, but to the massive financial detriment of Emerald, who had to engage in distressed financing and almost did not survive because of Underwriters' improper withholdings. Ultimately, Emerald was forced to expend even more valuable resources suing Underwriters to force payment of what was owed. Only after Emerald commenced and pressed on with litigation did Underwriters finally start catching up on the many tens of millions of dollars of long overdue coverage payments. Tens of millions are still overdue and improperly withheld. Accordingly, Underwriters also should be liable for bad faith.

Underwriters' Statement

The "Event Cancellation & Abandonment" insurance policies (the "Policies") Emerald purchased from Underwriters are intended to cover the cancellation of a particular event, like an annual trade show, under specific circumstances. Historically, the Policies were invoked when a particular natural disaster—like a hurricane—prevented one of Emerald's events from proceeding. As such, Emerald would submit at most one or two claims per year, and the premium on the Policies was less than a penny on the dollar.

Now, in the wake of the COVID-19 pandemic, Emerald has submitted nearly 170 claims under the Policies, an unprecedented volume. Each of these claims involves extensive details that must be ascertained in order to assess coverage and complete the adjustment of the claim. Moreover, these claims relate to the cancellation of events over a multi-year period, each scheduled for different dates, different locations, and under different circumstances in terms of restrictions and public health conditions. In the midst of this flood of claims, Underwriters have acted promptly to process claims, issue payments when warranted, and request any additional follow-up information that is required to ensure that Emerald receives every dollar it is owed under the Policies.

With very rare exceptions, Underwriters have either covered or issued advance payments on nearly all of Emerald's claims. Underwriters continues to seek to complete its assessment and adjustment of Emerald's claims, but Emerald has systematically failed or refused to provide the information Underwriters requested long ago. Rather than provide the information, Emerald responds by accusing Underwriters of bad faith and demands that Underwriters forgo their reasonable requests for necessary information and simply send a wire to Emerald in whatever amount Emerald wishes.

Underwriters have been faithful to their obligations under the Policies and at all times have acted diligently and in good faith to address the many claims Emerald has submitted. Underwriters stand ready to receive the information requested and to complete the assessment and adjustment of Emerald's claims. To date, however, Emerald has failed to cooperate toward this end, in breach of its obligation under the Policies to cooperate with Underwriters.

e. **Relief Sought and Damages**

<u>Emerald's Statement</u>

Emerald seeks full coverage for losses for cancelled or reduced events, other benefits provided under the Policies, pre- and post-judgment interest, and damages for bad faith, including:

**Lost Revenue from Cancelled or Reduced Events**: Under the Policies, Emerald is entitled to recover its gross revenue (less any defined recoveries and saved expenses) for events that have been cancelled or have reduced attendance due to the pandemic. Emerald has submitted about $337 million in claims for cancelled or reduced events. Underwriters have made total payments of about $208 million.

**Future Marketing Expense**: To help mitigate the impacts of cancelled or reduced events, the Policies provide supplemental coverage for marketing expenses, outside of policy limits. Underwriters have not agreed to pay anything for this coverage. The exact amounts being sought by Emerald continue to accrue (because of ongoing covered marketing obligations) and will be specified further in discovery.

**Interest**: Emerald is entitled to interest from the date the coverage was owed, which is when its claims were properly submitted. Interest accrued on improperly delayed payments and continues to accrue on unpaid

amounts. Total interest is many millions, with the exact amount to be determined in litigation.

**Bad Faith**: As a result of Underwriters' conduct in the adjusting and payment of the claims, Emerald will seek attorney's fees, consequential damages for the negative financial impact to Emerald (including the cost of the distressed financing – the exact cost of which in fees and interest is being provided to Underwriters in discovery), and punitive damages.

<u>Underwriters' Statement</u>

Emerald is not entitled to any of the alleged damages it asserts. With respect to Emerald's alleged lost revenues, Underwriters have made payments when Emerald has been able to demonstrate that a cancellation was unavoidable (as the language of the Policies require), and where Emerald has been able to substantiate its assertion of lost revenue. There are outstanding items of recovered revenue that Emerald has refused to provide Underwriters, such as profits from virtual events, settlement proceeds from negotiations with vendors, and other discounts, credits, and savings that Emerald realized as a result of cancellation. Emerald has refused to provide this information, which has rendered Underwriters unable to complete the adjustment of many of Emerald's claims.

The time it has taken to complete the evaluation of Emerald's claims is the product of the unique circumstances involved and Emerald's failure to provide the necessary information. In short, there is no basis for extra-contractual damages of any sort.

Nor is Emerald entitled to any alleged damages for Future Marketing Expenses. To date, Emerald has not presented Underwriters with any marketing expenses that were incurred for the specific purpose of mitigating the effects of adverse publicity on any particular event, which Underwriters have repeatedly requested Emerald to do in order to support any payment for

1  Future Marketing Expenses. Moreover, pursuant to the terms of the
2  Policies, any such expenditures must have been agreed by Underwriters
3  before there is the possibility of coverage.

**f. Discovery Status**

The current discovery cut-off is September 8, 2022. The Parties have engaged in the following discovery:

- The Parties have served multiple sets of written discovery. The Parties have resolved many discovery disagreements regarding these sets through meet and confer, but have several outstanding discovery disputes that will likely require motion practice.
- Document productions are on-going. Emerald has produced over 35,000 pages of documents, and Underwriters and their outside adjuster have produced over 100,000 pages. The Parties are in the process of gathering additional responsive documents.
- Third-party discovery has been conducted of Emerald's insurance broker and Underwriters' outside adjuster. Emerald anticipates additional third-party discovery after further productions by the parties.

The remaining discovery includes completion of document productions, possible further sets of interrogatories or requests for admission, a substantial number of depositions (with Emerald anticipating 5-7 and Underwriters anticipating 10-25), discovery disputes requiring Court intervention, and expert discovery.

There will be a dispute between the Parties regarding the discovery involving attorneys at Troutman Pepper who Emerald contends were serving a claims-handling function. Underwriters contend that Troutman Pepper served as their outside counsel and was retained to provide legal advice and

documents prepared by Troutman Pepper are subject to the attorney-client privilege and/or attorney work product doctrine.

There will be a privilege dispute with respect to in-house attorneys at Emerald who Underwriters contend were serving in a business capacity. Emerald contends that its in-house attorneys were providing legal advice and that their documents are subject to the attorney-client privilege and/or attorney work product doctrine.

The parties have been holding off on briefing these issues while they complete other basic discovery and prepare for mediation.

**g. Procedural History**

<u>Prior Motions</u>:

- Underwriters filed a Motion to Transfer Venue and Stay Action Pending Decision Thereon, seeking to transfer the action to the Southern District of New York (Dkt. 32). After full briefing, the Court denied the motion on May 26, 2021 (Dkt. 53).
- Underwriters filed a Motion to Dismiss Counts I and III of Plaintiff's Complaint (Dkt. 41). Emerald filed its Opposition on June 7, 2021 (Dkt. 54), and Underwriters withdrew the motion on June 21, 2021 (Dkt. 55).
- Magistrate Judge Scott entered a Stipulated Protective Order on September 30, 2021 (Dkt. 68).

<u>Settlement Conferences</u>: The Parties engaged in a full day of in-person mediation on November 10, 2021, but determined that additional discovery, exchanges of information, and Emerald's submission of its remaining claims were required to more effectively engage in efforts to resolve the Parties' disputes. On May 6, 2022, Emerald submitted its final set of insurance claims in this matter to Underwriters. The Parties have thus scheduled an additional two-day mediation session (anticipated to be in-

person) for August 2 and 3, 2022, the earliest available dates for both the Parties and the agreed-upon mediator.

**h. Existing Deadlines**

The Court's July 19, 2021 Scheduling Order (Dkt. 65) set the following dates:

- September 8, 2022: Completion of all discovery, including the hearing of discovery motions
- September 22, 2022: Deadline for private mediation, with a report due five days after the ADR proceeding is completed
- November 7, 2022: Deadline to file and have heard all other motions, including motions to join or amend the pleadings
- January 9, 2023: Pretrial conference
- January 17, 2023: Jury trial

**i. Request for Modification of Deadlines**

To preserve Court and party resources, the Parties seek to focus the discovery before the scheduled August mediation sessions on the key issues most likely to assist in the resolution of the matter and to defer full document productions, depositions, discovery disputes requiring Court intervention, expert discovery, and the anticipated extensive motions for summary judgment or summary adjudication until after the mediation, if needed.

Therefore, the Parties request that the pre-trial deadlines and trial date be continued as follows:

- February 10, 2023: Completion of all discovery, including the hearing of discovery motions
- April 10, 2023: Deadline to file and have heard all other motions, including motions to join or amend the pleadings

1. • August 8, 2023: Final Pretrial Conference (or on such later date convenient for the Court and that would allow the Court to rule on the substantive motions anticipated to be heard in April 2023)

The Parties have not previously requested a continuance of the pre-trial deadlines.

**j. Magistrate Judge for Trial**

The Parties do not consent to a magistrate judge for trial.

**k. Case Management Conference**

The Parties defer to the judgment of the court on whether a case management conference is needed at this time.  The Parties have agreed on the dates proposed above and are amenable to the court entering an adjusted case schedule reflecting those dates without a hearing.

**l. Immediate Relief Regarding the Case Schedule.**

As described in section i. above, the Parties request that the current pre-trial and trail dates be continued to allow the Parties to focus their efforts on information exchanges relevant to the scheduled August 2-3, 2022 mediation and to avoid burdening the Court with discovery and substantive motions until after the mediation, if the case cannot be resolved.

Dated: May 12, 2022            HALPERN MAY YBARRA GELBERG LLP

By  /s/  Susan P. Welch
Marc D. Halpern
Ryan D. White
Susan P. Welch
*Attorneys for Plaintiff Emerald Holding, Inc.*

JOINT CASE MANAGEMENT STATEMENT
10

| | | |
|---|---|---|
| Dated: May 12, 2022 | | ROBINSON & COLE LLP |
| | | Gerald P. Dwyer, Jr. |
| | | Rhonda J. Tobin |
| | | Jamie L. Edmonson |
| Dated: May 12, 2022 | | GIBSON, DUNN & CRUTCHER LLP |
| | By | /s/ *Timothy W. Loose* |
| | | Richard J. Doren |
| | | Timothy W. Loose |

*Attorneys for Defendants Lloyd's Syndicate 1967 (named as W.R. Berkley Syndicate Limited) and Great Lakes Insurance SE*

## ATTESTATION

Pursuant to Central District of California Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  May 12, 2022          /s/     Susan P. Welch

                              Susan P. Welch